UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CENTRAL STATES, SOUTHEAST AND
SOUTHWEST AREAS
HEALTH AND WELFARE FUND,

      Plaintiff,                                 Case No. 1:10-cv-1288

v.                                              HON. JANET T. NEFF

FIRST AGENCY, INC. and
GUARANTEE TRUST LIFE INSURANCE
COMPANY,

      Defendants.
_____/

**OPINION**

Plaintiff, an ERISA-governed[1] employee welfare benefit plan, filed this action seeking a declaratory judgment and restitution of insurance benefits paid for thirteen student-dependents of plan participants, injured in scholastic and collegiate athletic activities in various states, who were also insured under an excess medical plan provided by Defendant Guarantee Trust Life Insurance (GTL). Defendant First Agency, Inc. is the Michigan-based agent that sold the excess medical policies and denied benefits on behalf of GTL.

Defendants filed a Motion to Dismiss or for Summary Judgment (Dkt 19); Plaintiff filed a Response and Motion for Partial Summary Judgment on the Issue of Liability (Dkt 20), and Defendants have filed a Reply (Dkt 24). The Court has carefully considered the parties' arguments and determines that Defendants' motion is properly denied and Plaintiff's motion is properly

---

[1] Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1002(2).

granted.[2] For the reasons that follow, the Court concludes that GTL's coverage is primary, and Plaintiff is therefore entitled to seek restitution of payments made for the student-dependents under its ERISA health benefit plan.[3]

## I. UNDERLYING FACTS

Plaintiff is an ERISA-regulated health and welfare benefit plan (the "Plan") based in Illinois that provides medical and hospital benefits to Plan participants in the Teamster industry in various states and their dependents. Defendant GTL is an Illinois-based insurance company that provided insurance to school districts and colleges, including excess coverage for athletic injuries sustained by students. Defendant First Agency is a Kalamazoo, Michigan-based insurance agency that sold the GTL policies to certain school districts and colleges and then administered claims.

Plaintiff filed this action under the civil enforcement provisions of § 502(a)(3) of ERISA, as amended, 29 U.S.C. § 1132(a)(3), seeking equitable relief to enforce the terms of the Plan for restitution from Defendants for amounts Plaintiff paid for medical expenses of thirteen students, after First Agency denied benefits under GTL's policies providing coverage for accidental injuries sustained by students while participating in athletic activities. Plaintiff requested reimbursement from Defendants pursuant to the Plan's Coordination of Benefits provisions requiring an Other Plan that also provides benefits for medical treatment to a covered individual, to have primary coverage. Defendants refused to provide reimbursement.

---

[2] Having conducted a Pre-Motion Conference with counsel on the dispositive motions, and having fully reviewed the briefing, the Court finds oral argument unnecessary.

[3] Plaintiff notes that after a determination of liability (which the Court herein determines in Plaintiff's favor), the amount of reimbursement due Plaintiff can be resolved.

Plaintiff now seeks a declaration that it is not primarily liable to pay the current and future medical expenses of the students. Plaintiff also seeks restitution under federal common law of the benefits paid, which as of the date of the complaint totaled $124,505.13 (Compl. ¶ 44).

## II. LEGAL STANDARDS

Because the motions presented involve consideration of documentary evidence beyond the pleadings, the Court considers the parties' motions under the standard for summary judgment, rather than dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion for summary judgment is properly granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Slusher v. Carson,* 540 F.3d 449, 453 (6th Cir. 2008); *Harbin-Bey v. Rutter,* 420 F.3d 571, 575 (6th Cir. 2005). After reviewing the whole record, the Court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

## III. ANALYSIS

This case presents a "coordination of benefits" (COB) duel, between a self-insured ERISA benefit plan and a traditional medical insurance policy, over which coverage is primary. The parties dispute whether the COB provisions in Plaintiff's ERISA Plan have priority and apply to GTL's excess medical coverage, so that GTL has primary responsibility for the claims of the thirteen injured student athletes and must reimburse Plaintiff for benefits paid. The Court concludes that (1) the COB clause of the ERISA Plan has priority over the conflicting COB clause in GTL's traditional

insurance policy; and (2) under Article 5.01 of the Plan's COB clause, GTL's policy has primary responsibility for the students' medical claims.

## A. Conflicting COB Clauses

The starting point for analysis is whether the COB provisions of the Plan and GTL's policy are in conflict, deeming the ERISA Plan to have priority pursuant to federal common law. Federal common law remains a viable source of authority, and must be developed and applied by federal courts to address rights and obligations arising under ERISA, and ensure national uniformity of application. *Auto Owners Ins. Co. v. Thorn Apple Valley, Inc.,* 31 F.3d 371, 375 (6th Cir. 1994).

"The underlying purpose of ERISA is to protect 'the interests of participants in employee benefit plans and their beneficiaries.'" *Thorn Apple Valley,* 31 F.3d at 374-75 (quoting 29 U.S.C. § 1001(b)). "[T]his directive means that Congress sought to guard qualified benefit plans from claims, . . . which have been expressly disavowed by the plans." *Id.* Accordingly, "when a traditional insurance policy and a qualified ERISA plan contain conflicting coordination of benefits clauses, the terms of the ERISA plan, including its COB clause, must be given full effect" to advance the policy considerations behind the enactment of ERISA. *Id.* at 374. This is in keeping with "a primary goal of ERISA, which is to safeguard the financial integrity of qualified plans by shielding them from unanticipated claims." *Id.* at 375.

Defendant argues that the conflict rule from *Thorn Apple Valley* does not apply because GTL's policy provides only excess coverage and the Plan does not "expressly disavow" excess coverage. The Court finds these arguments unpersuasive.

Article V of the ERISA Plan, entitled "Coordination of Benefits," provides a series of rules for determining, in successive order, primary responsibility for benefits. Article 5.01 states, in relevant part:

**5.01 Priority of Coverage Where Covered Individual is Covered by an Other Plan**

If the benefits of this Plan duplicate or overlap with benefits for hospital, surgical, dental, psychiatric, chiropractic or other medical treatment provided by an Other Plan, such duplication or overlapping shall be avoided. In this regard, primary responsibility for providing benefits shall be determined in the following order:

(a) An Other Plan shall have primary responsibility if it has no coordination of benefits provision or if the Other Plan provides specific risk coverage, including but not limited to, premises liability or medical benefits coverage.

* * *

(c) Whichever of this Plan or an Other Plan that provides benefits for the person, other than as a Dependent, shall have primary responsibility.

* * *

(e) If there is coverage provided for a Participant or Dependent by more than one (1) plan, the plan which is providing coverage through active employment shall have primary responsibility.

GTL's COB clause provides in relevant part:

We will pay the Insured Percent of incurred Covered Charges which are in excess of the total benefits payable for the same Injury by any Other Valid and Collectible Insurance or Plan on a provision of service or on an expense incurred basis, up to the Maximum Benefit Amount, per Injury.

The COB provisions are in direct conflict. Although GTL's COB clause states that it will pay charges "in excess" of the total benefits payable by another valid plan, the ERISA Plan COB provisions, on their face, do not require the payment of benefits to the student-dependents in light

of GTL's insurance coverage of the students' accidental injuries (Article 5.01(a) and (c)). Thus, the COB provisions are unambiguous and cannot be reconciled.

The ERISA Plan expressly disavows payment under the circumstances presented, as discussed subsequently. Under the Sixth Circuit Court of Appeal's reasoning in *Thorn Apple Valley,* the terms of the ERISA plan, including its COB clause, must be given full effect. 31 F.3d at 375. Defendants attempt to escape this result by arguing that the policy considerations of *Thorn Apple Valley*—protecting ERISA plans against "unanticipated claims"—do not apply here. Defendants assert that Plaintiff would have no reason to anticipate that an excess policy would provide primary coverage; thus, the students' claims were not "unanticipated." The reasoning of *Thorn Apple Valley* cannot be parsed into such exclusionary tests to ignore the overriding purpose and policy concerns of ERISA and place the financial integrity of qualified ERISA plans at risk. Where the COB provisions of a qualified self-insured ERISA plan and a traditional insurance policy are facially valid and cannot be reconciled, the ERISA COB clause must be given full effect. *Thorn Apple Valley,* 31 F.3d at 375.

## B. Effect of ERISA COB

Having determined that the Plan's COB clause must be given full effect, the remaining inquiry is whether Article 5.01(a) applies to make GTL's policy coverage primary. Defendants concede that GTL's policy is an "Other Plan," but argue that Article 5.01(a) is otherwise inapplicable to GTL because the GTL policy has a COB provision and the GTL policy does not provide "specific risk coverage."

ERISA contract provisions must be interpreted "'according to their plain meaning, in an ordinary and popular sense.'" *Great-West Life & Annuity Ins. Co. v. Allstate Ins. Co.,* 202 F.3d 897,

901 (6th Cir. 2000) (quoting *Perez v. Aetna Life Ins. Co.,* 150 F.3d 550, 556 (6th Cir.1998) (en banc)). The Court therefore applies a plain meaning analysis to construction of the Plan's COB provisions.

Since GTL's policy contains a COB clause, the only dispute is whether GTL's policy provides specific risk coverage. If so, then rule (a) of Article 5.01 applies, and GTL's policy has primary responsibility pursuant to the ERISA Plan COB provisions.

Defendants argue that the GTL policy provides "multi-risk coverage" as opposed to "specific risk coverage" because once injured in an accident, an athlete might be entitled to medical benefits, accidental death benefits, or dismemberment benefits. Therefore, GTL's policy provides multi-risk, not specific risk coverage. Consequently, the Plan does not expressly disavow coverage.

Defendants offer no authority for their argument, nor do they rely on any policy definitions or terms. The Court must interpret the Plan's terms according to their plain meaning, in an ordinary and popular sense. The GTL policy offers coverage *specifically against the risk of accidental injury of students participating in athletic activities*. The term "specific risk" in its ordinary and popular sense, encompasses the coverage GTL is providing. Because the GTL policy provides specific risk coverage for the student athletes' injuries at issue, under the first rule of the Plan's COB clause, the GTL policy shall have primary responsibility.

Even if GTL's policy were deemed not to be "specific risk" coverage, and thus, the first rule of the Plan's COB did not apply, the third rule, rule (c), would apply to allocate primary responsibility to GTL's policy. Under rule (c), whichever plan or policy "that provides benefits for the person, other than as a Dependent, shall have primary responsibility." The student athletes are

7

covered as dependents under the Plan, but are directly covered under GTL's policy. Accordingly, rule (c) allocates primary responsibility to GTL.

Defendants nonetheless argue that because GTL's policy is excess coverage, it would be patently unfair, and inconsistent with *Thorn Apple Valley* to change GTL's coverage from excess to primary. Defendants' characterization of the result is factually unsupported, but, moreover, is beside the point. Under *Thorn Apple Valley*, the Plan's COB clause must be given full effect, and Article 5.01(a), and/or 5.01(c) of the Plan, makes GTL's coverage primary.

## IV. STATUTE OF LIMITATIONS

Defendants argue that certain of Plaintiff's claims are barred by the contractual limitations period in GTL's policy, which states that no action may be brought "after 3 years from the time written proof was required to be given" (Defs.' Ex. A at 14). Further, GTL's policy requires written proof to be given within 60 days after release from the hospital (*id.*). Defendants' calculations of the applicable limitations periods with respect to particular students are not entirely clear, but in any event, the Court disagrees that the GTL contractual limitations period applies to Plaintiff's action.

Plaintiff persuasively argues that because there is no explicit statute of limitations in ERISA applicable to this dispute, the most analogous limitations period is that provided in the Plan itself. The Plan adopts a ten-year limitations period. Having determined that the policy considerations underlying ERISA mandate giving full effect to the Plan's COB clause, it makes little sense to deny recourse by in turn giving effect to the GTL contractual limitations period. As Plaintiff points out, it is questionable whether and how the GTL policy limitations apply in the circumstances presented (Pl's. Resp. at 16-18). Further, given the ambiguities in the GTL policy language concerning the running of the limitations period with respect to each injured student, any ambiguities should be

construed against Defendants. The Court agrees with Plaintiff that such ambiguous limitations should not apply to defeat the ability of an ERISA-regulated plan to enforce ERISA § 502(a)(3) claims. *See Newby Int'l, Inc. v. Nautilus Ins. Co.,* 112 F. App'x 397, 405 (6th Cir. 2004) ("any ambiguity in an insurance contract must be construed against the insurer-drafter of the policy and in favor of the insured"). Plaintiff's claims are not barred by GTL's contractual limitations period.

## V. DISMISSAL OF DEFENDANT FIRST AGENCY

Defendants seek the dismissal of Defendant First Agency on the grounds that the relief sought by Plaintiff does not implicate First Agency, which merely sold the GTL policy to certain school districts and colleges and then administered claims. Plaintiff opposes dismissal, arguing that without First Agency as a party-defendant, this Court cannot order appropriate equitable relief. In view of the fact that First Agency denied the benefits at issue and is the administrator of GTL's policy, the Court finds no persuasive grounds for the dismissal of First Agency. First Agency, as claims administrator, is responsible for processing claims pertaining to the injured students. The ultimate resolution of this case therefore hinges on benefit determinations to be made by First Agency, who is accordingly a proper party-defendant. Defendants' request to dismiss First Agency is denied.

## VI. CONCLUSION

The Court concludes that the COB clause in GTL's traditional insurance policy must yield to the COB clause in Plaintiff's self-insured ERISA employee benefit plan. Because the Plan's COB provisions dictate that GTL has primary responsibility for the payment of claims under its policy, Defendants' Motion to Dismiss or for Summary Judgment (Dkt 19) is properly denied, and

Plaintiff's Motion for Partial Summary Judgment on the Issue of Liability (Dkt 20) is properly granted.  Further, Defendants' request to dismiss First Agency as a defendant is denied.

An Order will be entered consistent with this Opinion.


DATED: March 22, 2012              /s/ Janet T. Neff
                                   JANET T. NEFF
                                   United States District Judge